Thomas S. Boothe
Plaintiff, Pro Se
7635 SW Westmoor Way
Portland, OR 97225-2138
Tele: 503.292.5800 (office)
      503.292.5556 (fax)
E-mail: *tsb@boothehouse.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS S. BOOTHE,<br><br>    Plaintiff,<br><br>    v.<br><br>**FOX ORTEGA ENTERPRISES, INC.**, a California corporation dba **Premier Cru; JOHN E. FOX, JANE DOE,** and **JOHN DOE**,<br><br>    Defendants. | No. CV16 169 JCS<br><br>COMPLAINT FOR DAMAGES<br><br>1. Breach of Contract<br>2. Fraud<br>3. Violation of Unfair Business Practices<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff alleges:

## I.

## PARTIES

1.1    Thomas S. Boothe is a resident of the state of Oregon.

1.2    Fox Ortega Enterprises, Inc. is a California corporation, doing business as Premier Cru ("Premier Cru").

/ / / / /

Page   1   -   COMPLAINT

1  1.3  John E. Fox is an owner, an officer and the manager of Premier Cru.

## II.
## JURISDICTION

2.1  Jurisdiction exists under 28 U.S.C. § 1332 because the amount in conflict exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between plaintiff and defendants.

## III
## VENUE

3.1  Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b) and (c) because this is a civil action arising from defendants' actions within this judicial district.

## IV
## INTRADISTRICT ASSIGNMENT

4.1  Substantially all of the actions and omissions upon which this case is based arose in the County of Alameda, California. Therefore, this complaint should be assigned to either the San Francisco or Oakland Division of this Court pursuant to Local Rule 3-2(d).

## V
## FACTS

5.1  Premier Cru is in the business of selling fine wines through the Internet and, until recently from retail locations in Alameda County, most recently in Berkeley, California. Premier Cru represents itself as a "source to the world's finest wines at extremely competitive prices to provide exceptional experiences for collectors, connoisseurs, and everyday wine lovers."

/ / / / /

Page  2  -  COMPLAINT

5.2   Plaintiff began buying wines from Premier Cru in the early 1990s. Plaintiff dealt primarily with one of three people at Premier Cru, including John Fox. Most of the wines plaintiff bought were offered by Premier Cru as presales or futures. A buyer pays in advance of delivery for each a presale and a futures order. In a futures order such as Bordeaux, the wine is harvested in the fall of the vintage's year. The next summer, usually in June and July, the wine is offered for sale as a future. The wine is typically bottled during the Spring of the second year for delivery that Fall. Harvest to delivery of a Bordeaux wine is thus typically two to two-and-a-half years.

5.3   Throughout the multiple transactions, plaintiff talked with Fox from time to time. Fox discussed how Premier Cru always had the wines it sold under contract, but that delivery could be delayed because of the volume Premier Cru sold.

5.4   The 2009 vintage wines were not delivered in 2011 or 2012 as they should have been. When plaintiff inquired, he was told there were logistical issues that delayed delivery. When plaintiff talked with Fox, Fox assured plaintiff that while delivery was delayed, the wines had been purchased and the deliveries would be made as the wines arrived in Premier Cru's warehouse. In reliance on Fox's personal representations, plaintiff continued to buy wines.

5.5   As of early April 2015, Premier Cru owed plaintiff several hundred bottles of wine. Plaintiff spoke with Premier Cru and Fox individually, and began insisting on a delivery schedule from Fox. Fox gave multiple assurances and sent plaintiff a schedule of delivery dates for the older orders. Fox told plaintiff that the remainder of his orders from Premier Cru would be more timely shipped.

/ / / / /

Page   3   -   COMPLAINT

5.6   Fox assured plaintiff that plaintiff's wines would be ready for delivery and that the rest of his wines would be forthcoming. Fox represented to plaintiff that all deliveries in the future would be timely and that the problem delaying plaintiff's futures orders in particular had been caused by a specific négociant who had defaulted and refunded money on a large purchase by Premier Cru. Following the conversations, Fox personally emailed plaintiff a chart of delivery dates for the wines then on order. Copies of some of the emails from Fox to plaintiff and the specific representations about delivery dates are attached as exhibits 1 and 2.

5.7   Plaintiff had known Fox for more than 20 years, and had visited him at Premier Crus' earlier storefront location in Emeryville. Plaintiff knew from talking with Fox that pre-orders could take months for delivery. However, plaintiff also noticed that the wines he had ordered from Premier Cru were appearing as available for retail from Premier Cru's mail-order competitors in the Bay Area. Plaintiff talked with Fox about this, and Fox continued to assure plaintiff that the wines were waiting to be containerized and shipped.

5.8   Premier Cru shipped multiple cases at the end of April 2015. Plaintiff continued to talk with Fox, who was apologetic and repeated that all orders would thereafter be timely fulfilled. Fox and plaintiff continued in direct communication about the wine orders and when they would be delivered, particularly the earlier orders. Copies of the emails are attached as exhibits: Exhibit 1 - May 5-7, 2015 and Exhibit 2 – May 7, 2015, with a delivery date chart attached promising a May 11, 2015 delivery. Fox partially performed on the promised delivery.

5.9   Premier Cru cleared much of the backlog, but excluded:

Page   4   -   COMPLAINT

| Date of Order | Order Number | Wine | Number ordered | Total Price |
|---|---|---|---|---|
| 5/20/2009 | 0000318201 | 2007 Chateauneuf Clos des Papes, Avril | 12 | $1,439.88 |
| 6/24/2010 | 0000339670 | 2009 Montrose | 12 | $2,159.88 |
| 7/5/2010 | 0000340318 | 2009 Trotanoy | 12 | $3,959.88 |
| 7/6/2010 | 0000340347 | 2009 Petrus | 6 | $13,194.00 |
| 7/14/2010 | 0000340621 | 2009 Lafleur | 12 | $14,388.00 |
| 7/9/2011 | 0000359025 | 2010 Petrus | 6 | $16,194.00 |
| 1/20/2012 | 0000372413 | 2009 Ermitage l'Ermite Rouge, Chapoutier | 10 | $2,699.90 |
| 1/20/2012 | 0000372413 | 2009 Ermitage l'Ermite Blanc, Chapoutier | 9 | $2,969.91 |
| 6/25/2013 | 0000416764 | 2011 Chevalier Montrachet Demoiselles, Jadot | 12 | $2,159.88 |
| 6/28/2013 | 0000417005 | 2008 Grange | 6 | $3,599.94 |
| 6/17/2014 | 0000447661 | 2002 Salon le Mesnil Blanc de Blancs | 6 | $1,950.00 |
| 9/9/2014 | 0000454911 | 2012 Puligny Montrachet Clos de la | 6 | $701.96 |

Page  5  -   COMPLAINT

| Date | Number | Description | Qty | Price |
|---|---|---|---|---|
| | | Garenne Magnum, Jadot | | |
| 9/9/2014 | 0000454911 | 2012 Puligny Montrachet les Referts Magnum, Jadot | 6 | $623.96 |
| 9/18/2014 | 0000455586 | 2012 Chevalier Montrachet, Leflaive | 2 | $850.00 |
| 9/18/2014 | 0000455588 | 2012 Puligny Montrachet Combettes, Sauzet | 12 | $1,439.88 |
| 9/18/2014 | 0000455587 | 2012 Corton Charlemagne Magnum, Jadot, magnum | 2 | $559.98 |
| 9/18/2014 | 0000455589 | 2012 Puligny Clos de la Mouchere, Boillot | 12 | $1,199.88 |
| 10/6/2014 | 0000457362 | 2012 Clos Vougeot V.V., Chateau de La Tour | 7 | $1,365.00 |
| 12/20/2014 | 0000464956 | 2000 La Mission Haut Brion | 4 | $2,300.00 |
| 12/20/2014 | 0000464956 | 2000 Margaux | 4 | $2,999.96 |
| 12/20/2014 | 0000464956 | 2000 Haut Brion | 4 | $2,399.96 |

Page   6   -   COMPLAINT

| Date of Order | Order Number | Wine | Number ordered | Total Price |
|---|---|---|---|---|
| 12/20/2014 | 0000464956 | 2006 Cristal Rose | 6 | $1,650.00 |
| 12/24/2014 | 0000465379 | 1998 La Mission Haut Brion | 12 | $3,839.88 |

5.10  Plaintiff emailed Fox about delivery shortcomings, and Fox responded "I will look into it and revert!" A copy of the May 22 email chain is attached as Exhibit 3.

5.11  Plaintiff and Fox spoke further, and Fox emailed his response on June 25. A copy of Fox's email is attached as Exhibit 4.

5.12  Plaintiff called Fox repeatedly in the weeks that followed. Fox responded with a June 26, 2015 email that conveyed the updated delivery representations. Copies of the email and its attachment are attached as Exhibit 5.

5.13  Plaintiff spoke with Fox about the delivery of the next shipment. Plaintiff and Fox exchanged emails on September 24, 2015, about Fox getting an updated delivery chart to plaintiff. A copy of the September 24, 2015, email chain is attached as Exhibit 6. During the conversations around this time, Fox continued to assure delivery of the ordered wines.

5.14  Following the promise of delivery and the partial deliveries of the pre-orders and futures, and relying on Fox's specific representations, plaintiff resumed ordering wines, including:

| Date of Order | Order Number | Wine | Number ordered | Total Price |
|---|---|---|---|---|
| 4/19/2015 | 0000476681 | 1995 d'Yquem | 24 | $3,510.00 |

Page  7  -  COMPLAINT

| | | | | |
|---|---|---|---|---|
| 4/19/2015 | 0000476681 | 1997 d'Yquem | 12 | $1,949.92 |
| 4/19/2015 | 0000476681 | 1990 d'Yquem | 12 | $3,599.88 |
| 4/20/2015 | 0000476792 | 1996 d'Yquem | 12 | $1,677.00 |
| 5/9/2015 | 0000478208 | 2002 Montrachet, DRC | 1 | $2,799.20 |
| 5/9/2015 | 0000478208 | 2011 La Tache | 2 | $2,640.00 |
| 5/9/2015 | 0000478208 | 2008 Ausone Magnum | 1 | $879.20 |
| 5/9/2015 | 0000478208 | 2012 Romanee Conti | 1 | $9,599.20 |
| 7/15/2015 | 0000484192 | 2005 Perrot Minot Clos de Beze | 4 | $1,499.97 |
| 7/15/2015 | 0000484187 | 2005 Cristal Rose magnum | 2 | $1,348.50 |
| 7/15/2015 | 0000484202 | 2003 Hermitage Rouge Ex Voto | 12 | $3,150.00 |
| 7/15/2015 | 0000484202 | 1999 Rousseau, Clos de Beze | 2 | $1,348.50 |
| 7/15/2015 | 0000484202 | 1986 Lafite Rothschild | 12 | $7,199.91 |
| 8/3/2015 | 0000485938 | 2012 Ramonet Batard | 5 | $1,056.25 |

Page   8   -   COMPLAINT

| Date | Number | Description | Qty | Amount |
|---|---|---|---|---|
| | | Montrachet | | |
| 8/22/2015 | 0000488080 | 2012 La Tache, DRC | 4 | $7,596.00 |
| 8/22/2015 | 0000488083 | 2012 Richebourg, DRC | 4 | $3,599.96 |
| 8/22/2015 | 0000488084 | 2012 Romanee St Vivant, DRC | 4 | $3,199.96 |
| 8/22/2015 | 0000488088 | 2013 Bonnes Mares, Vogue | 4 | $1,400.00 |
| 8/22/2015 | 0000488089 | 2003 Cote Rotie La Mouline, Guigal | 4 | $1,559.96 |
| 8/22/2015 | 0000488091 | 2003 Cote Rotie La Turque, Guigal | 4 | $1,559.96 |
| 8/22/2015 | 0000488092 | 2003 Hermitage Rouge Ex-Voto, Guigal | 4 | $1,039.96 |
| 9/5/15 | 0000489303 | 2011 Cote Rotie La Landonne, Guigal | 12 | $2,279.88 |
| 9/5/15 | 0000489298 | 2013 Chablis Preuses, Fevre | 12 | $599.98 |
| 9/5/15 | 0000489299 | 2012 La Mission Haut Brion Blanc | 12 | $3,900.00 |
| 9/5/15 | 0000489296 | 2006 Taittinger Comtes de | 12 | $1,079.88 |

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

|  |  | Champagne Blanc de Blancs |  |  |
|---|---|---|---|---|
| 9/5/15 | 0000489305 | 2012 Sassicaia | 12 | $1,247.88 |
| 9/5/15 | 0000489302 | 2000 Pavie, Magnum | 2 | $1,199.88 |
| 9/26/15 | 0000491119 | 1999 Lafite | 12 | $2,879.93 |
| 10/14/15 | 0000492167 | 2001 Climens | 12 | $1,799.91 |

5.15 Plaintiff continued to call Fox about delivery of plaintiff's wines.

5.16 Fox provided another updated delivery schedule on October 21, 2015. Plaintiff responded with an email detailing the wines that had been promised as being ready to ship in the months before. Fox responded there had been an internal "glitch" and that more wines were expected in the next few weeks. When plaintiff noticed a discrepancy between the charts from Fox and the online status report on his orders, plaintiff emailed Fox on October 22, 2015. A copy of the October 21-22 email chain is attached as Exhibit 7.

5.17 On the evening of October 22, 2015, Fox sent a new chart listing delivery of the wines. Copies of the email and the chart it conveyed are attached as Exhibit 8.

5.18 Plaintiff responded by email on November 1, requesting a November 30 shipment of the wines that were supposedly then available. Fox responded on November 2, "Ok, will do!" A copy of the email chain is attached as Exhibit 9.

5.19 Plaintiff and Fox spoke about the stressors on Fox of Premier Cru and his personal health concerns, as well as arranging the November 30 delivery. Plaintiff sought confirmation in a November 20 email. Fox responded

Page 10 - COMPLAINT

approximately a half-an-hour later, "Yes, Tom, keep the faith! Your wines will be shipped as planned." A copy of the November 2 to 22 email chain is attached as Exhibit 10.

5.20   On November 24, plaintiff emailed Fox again about delivery of the order, "Make me smile for Thanksgiving and tell me my wine is still on board to ship on Monday." Fox responded two minutes later, "Yes, still on board Tom!!" A copy of the email chain is attached as Exhibit 11.

5.21   On December 1, plaintiff emailed a brief message asking Fox to have the shipping department send information regarding the shipment of the day before. Fox responded by email shortly thereafter, "Our warehouse tells me the trucker we use doesn't come on specific days that we request, only what is convenient for them, though they do pickup form us weekly. They are scheduled to pickup tomorrow." A copy of the email chain is attached as Exhibit 12.

5.22   After no wine had been delivered in the following weeks and after multiple calls to Fox went generated no response, plaintiff learned from a friend that Premier Cru had promised him delivery of some of the wines that were backordered for him. Based on that, plaintiff emailed his friend's salesperson at Premier Cru, Melissa. Plaintiff then realized that Melissa might need context for the earlier email and emailed her copies of several of the email chains between plaintiff and Fox. Copies of plaintiff's emails to Melissa are attached as Exhibit 13. Neither Melissa nor Fox, nor anyone else from Premier Cru, responded.

## VI

### CLAIM ONE:  BREACH OF CONTRACT

As against defendant Premier Cru:

6.1   Plaintiff realleges paragraphs 1.1 through 5.22.

Page   11   -   COMPLAINT

6.2   With each discrete order plaintiff placed, plaintiff and Premier Cru entered into a contract for delivery of the specified wines at the specified prices.

6.3   Plaintiff performed all conditions precedent for each contract.

6.4   For each undelivered order of wines, Premier Cru breached its contract with plaintiff by failing to deliver the wines as promised.

6.5   As a result of Premier Crus' breaches, plaintiff has been damaged in the amount of no less than $161,896.40.

## VII

## CLAIM TWO:  FRAUD
### (Cal. Civil Code § 1710.4)

As against defendant Premier Cru:

7.1   Plaintiff realleges paragraphs 1.1 through 5.22.

7.2   Premier Cru represented itself as having purchased the wines it listed for sale and as being able to deliver wines in a timely manner.

7.3   Premier Cru, and Fox in particular, knew or should have known that it had not already purchased or made arrangements for the wines it offered as presales or futures and would therefore be unable to deliver the wines it sold.

7.4   Premier Cru made its representations with the intent and expectation that its customers, including plaintiff, would rely on them as a basis for making the purchases they did.

7.5   Premier Cru was essentially running a Ponzi scheme, whereby later buyers were financing the acquisition of wines for earlier buyers.

7.6   Plaintiff did not know that Premier Cru knew or should have known that Premier Cru would not be performing as promised. If plaintiff had known

Page   12   -   COMPLAINT

that Premier Cru knew or should have known Premier Cru would be unable to perform as represented, plaintiff would not have bought wines from Premier Cru, but would instead have purchased the wines from Premier Cru's competitors.

7.7   As a result of Premier Cru's misrepresentations, plaintiff has been damaged in the amount no less than $161,896.40.

7.8   Premier Cru's promises of performance despite knowing, or having should have known, that it could not assure performance demonstrates the conduct that punitive damages are intended to deter, both specifically and generally. An award of punitive damages in an amount deemed just and appropriate by the jury should be assessed against Premier Cru.

## VIII

## CLAIM THREE: FRAUD
### (Cal. Civil Code § 1710.4)

**As against defendant John Fox, individually,**

8.1   Plaintiff realleges paragraphs 1.1 through 5.22 and 7.2 through 7.6.

8.2   Plaintiff made his purchases in direct reliance on Fox's representations about provenance, acquisition and delivery.

8.3   Fox knew, or should have known, that his representations were false, and that plaintiff would rely on them.

8.4   Plaintiff did not know, and could not have known, that Fox's representations were false. Once plaintiff had enough knowledge to doubt Fox's word, plaintiff stopped buying wines from Premier Cru.

8.5   As a result of Fox's misrepresentations, plaintiff has been damaged in the amount no less than $161,896.40.

/ / / / /

Page   13   -   COMPLAINT

8.6  Fox's promises of performance despite knowing, or having should have known, that he through Premier Cru would not perform as promised demonstrates the conduct that punitive damages are intended to deter, both specifically and generally. An award of punitive damages in an amount deemed just and appropriate by the jury should be assessed against Fox.

## IX

## CLAIM THREE: UNFAIR BUSINESS PRACTICE
## (Cal. Business & Professions Code § 17200 et seq)

9.1  Plaintiff realleges paragraphs 5.1 through 5.22, 7.2 through 7.7, and 8.2 through 8.4.

9.2  California Business and Professions Code § 17200 prohibits "fraudulent business act[s] or practice[s]" that are likely to deceive members of the public.

9.3  Premier Cru and Fox's business practice was to collect money from customers for wines Premier Cru had not purchased or arranged purchase and then delay delivery or not deliver at all.

9.4  Premier Cru and Fox ran a Ponzi scheme by inducing customers with low prices with no intent of performing on all of its sales.

9.5  Premier Cru and Fox's representations induced plaintiff to place multiple orders with them over several years. Premier Cru and Fox's misrepresentations caused harm to plaintiff in the amount of $161,896.40.

9.6  Reasonable customers would be and were misled by Premier Cru and Fox's misrepresentations.

/ / / / /

/ / / / /

/ / / / /

Page  14  -  COMPLAINT

## PRAYER

WHEREFORE, plaintiff prays for judgment in favor of plaintiff and against defendants as follows:

As against defendants, and each of them:

    A.    For compensatory damages in the amount of $161,896.40.

    B.    For prejudgment interest at the rate set by law;

    C.    For punitive damages in an amount determined by the jury to be just and appropriate to deter defendants, and each of them, specifically and others generally from engaging in the alleged or similar conduct;

    D.    For plaintiff's reasonable attorney fees; and

    E.    For such other and further relief as this Court deems just and equitable.

DATED: January 8, 2016.

_/s/ Thomas S. Boothe_
Thomas S. Boothe
Pro Se

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38(b), plaintiff demands his right to present this matter for trial by a jury.

DATED: January 8, 2016

_/s/ Thomas S. Boothe_
Thomas S. Boothe
Pro Se

Page  15  -  COMPLAINT